## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

THE 1 STOP MD, LLC,

      Plaintiff,

v.                              Case No: 8:22-cv-602-WFJ-AAS

PODS USA, LLC and
DEEPAK PODDAR,

      Defendants.

_____/

## **ORDER**

      This matter comes before the Court on Defendant Deepak Poddar's Amended Motion to Dismiss for Lack of Personal Jurisdiction, Dkt. 44. Plaintiff The 1 Stop MD, LLC filed a response in opposition, Dkt. 46, to which Mr. Poddar replied, Dkt. 49. Upon careful consideration, the Court denies Mr. Poddar's motion.

## **BACKGROUND**

      Plaintiff is a Georgia limited liability company that buys and resells personal protection equipment ("PPE"). Dkt. 17 ¶¶ 4, 9. Plaintiff's principal place of business is in Florida. *Id.* ¶ 4. Defendant Pods USA, LLC ("Pods") is a Delaware limited liability company that supplies companies like Plaintiff with PPE. *Id.* ¶¶ 2, 11. Pods is owned and operated by its President and sole member, Defendant

Deepak Poddar. *Id.* ¶¶ 14−15; Dkt. 44-1 at 1. Mr. Poddar is a citizen and resident of Canada. Dkt. 17 ¶ 3; Dkt. 44-1 at 1.

During the COVID-19 pandemic, Defendants purportedly began marketing COVID-19 rapid test kits on Pods' website. Dkt. 17 ¶ 8. Following a spike in consumer demand for rapid test kits in late 2021, Plaintiff came across Pods' website while searching for a test kit supplier. *Id.* ¶¶ 10−11. Plaintiff alleges that it spoke with Mr. Poddar about ordering 100,000 test kits. *Id.* ¶ 15. Mr. Poddar allegedly stated that Pods could supply Plaintiff with 100,000 rapid test kits manufactured in China by a company called iHealth. *Id.* ¶¶ 16−17. Mr. Poddar purportedly represented that full delivery would be made at Plaintiff's place of business within four to seven business days of Plaintiff's order. *Id.* ¶¶ 18−19.

On January 18, 2022, following its conversations with Mr. Poddar, Plaintiff ordered from Pods 100,000 Covid-19 rapid test kits at a price of $14 per box. *Id.* ¶ 20. The invoice documenting the transaction stated that delivery would be made "within 1 week" of Pods' receipt of full payment. *Id.* On the same day that Plaintiff placed its order, Plaintiff wired $1,400,000—the total amount due on the invoice—to Pods' bank account in Rhode Island. *Id.* ¶ 21. Though the 100,000 test kits were to be delivered within a week, Plaintiff did not receive any test kits until early February. *Id.* ¶¶ 23−24.

One month after placing its order, Plaintiff had received less than half of the test kits it ordered. *Id.* ¶ 26. Plaintiff states that Mr. Poddar denied its demand for a refund for the test kits that had not been delivered. *Id.* ¶ 35. Instead, Mr. Poddar allegedly offered to provide Plaintiff with 22,680 iHealth test kits from a different supplier if Plaintiff paid $2,000 for shipping. *Id.* Only 15,120 of those test kits arrived. *Id.* Plaintiff states that, by this point, the market price for test kits was rapidly declining, hindering Plaintiff's ability to resell the test kits for profit. *Id.* ¶¶ 27−29.

Plaintiff further asserts that the initial test kits delivered by Pods were defective and counterfeit. *Id.* ¶¶ 31−37. The test kits allegedly contained insufficient liquid to submerge the test swab, leading to complaints and demands for refunds from Plaintiff's customers. *Id.* ¶ 31. Additionally, the initial test kits purportedly lacked airway bill stickers typically present on all iHealth test kit shipments. *Id.* ¶ 34. Plaintiff states that the 15,120 iHealth test kits that Pods furnished from the alternative supplier had sufficient liquid and possessed airway bill stickers. *Id.* ¶ 35. Plaintiff later received written confirmation from iHealth that the initial test kits provided by Pods were counterfeit. *Id.* ¶ 37.

Based on these allegations, Plaintiff brings an eight-count Amended Complaint against Pods and Mr. Poddar. *Id.* ¶¶ 41−111. In Count I, Plaintiff brings a breach of contract claim against Pods. *Id.* ¶¶ 42−46. Count II is a false

designation of origin claim brought against both Defendants under the Lanham Act, 15 U.S.C. §§ 1051 *et seq. Id.* ¶¶ 47−53. Relatedly, in Count III, Plaintiff claims that both Defendants trafficked in counterfeit goods in violation of 18 U.S.C. § 2320. *Id.* ¶¶ 54−56. In Count IV, Plaintiff alleges that Defendants violated Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), section 501.201 *et seq.*, Florida Statutes. *Id.* ¶¶ 57−88. Counts V and VI are fraud and negligent misrepresentation claims, respectively, against both Defendants. *Id.* ¶¶ 89−101. Against Pods, Plaintiff's Count VII asserts a breach of the implied warranty of merchantability. *Id.* ¶¶ 102−06. Finally, in Count VIII, Plaintiff seeks a declaratory judgment deeming certain terms and conditions as not part of the contract between Plaintiff and Pods. *Id.* ¶¶ 107−11.

While Pods has stipulated to this Court's exercise of personal jurisdiction over it, Dkt. 31 ¶¶ 5−6, Mr. Poddar has not. Mr. Poddar now moves to dismiss the Amended Complaint for lack of personal jurisdiction. Dkt. 44.

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(2), a district court may dismiss a complaint for lack of personal jurisdiction. Where a nonresident defendant asserts the absence of personal jurisdiction, a court must engage in a three-step, burden-shifting analysis. *Diulus v. Am. Express Travel Related Servs. Co.*, 823 F. App'x 843, 848 (11th Cir. 2020).

4

First, the plaintiff bears the initial burden of alleging sufficient facts in its complaint to establish a prima facie case of jurisdiction. *Id.* (quoting *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1280 (11th Cir. 2009)). Next, if the complaint contains sufficient facts, and the defendant submits affidavit evidence supporting its position that personal jurisdiction is lacking, the burden shifts back to the plaintiff to produce affidavits or other competent evidence supporting jurisdiction. *Id.* (quoting *Mazer*, 556 F.3d at 1274). Finally, "[w]here the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff." *Id.* (quoting *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010)).

## ANALYSIS

Before turning to the question of personal jurisdiction, the Court must address a preliminary issue concerning one of Plaintiff's claims. In Count III, Plaintiff alleges that Defendants violated 18 U.S.C. § 2320 by trafficking in counterfeit goods. Dkt. 17 ¶¶ 54−56. Section 2320 is a criminal statute with no civil remedy provision. *See, e.g.*, *BBC Grp. NV LLC v. Island Life Rest. Grp. LLC*, 413 F. Supp. 3d 1032, 1041 (W.D. Wash. 2019) (dismissing trademark counterfeiting claim brought pursuant to § 2320). Because Count III is not a cognizable claim, it must be dismissed.

5

The remaining claims alleged against Mr. Poddar are fraud, negligent misrepresentation, false designation of origin in violation of the Lanham Act, and a violation of the FDUTPA. In moving to dismiss these claims, Mr. Poddar asserts that he is not subject to this Court's personal jurisdiction. *See* Dkt. 44. In response, Plaintiff primarily contends that the Court's personal jurisdiction over Mr. Poddar arises from Federal Rule of Civil Procedure 4(k)(1)(C). Dkt. 46 at 4–6. Plaintiff's position is unavailing.

Pursuant to Rule 4(k)(1)(C), the service of a summons or the filing of a waiver of service "authorized by a federal statute" establishes personal jurisdiction over a defendant. Plaintiff avers that Mr. Poddar's filing of a waiver of service in this action establishes personal jurisdiction because Plaintiff's Amended Complaint is based, in part, on a violation of the Lanham Act. Dkt. 46 at 4–6. However, the Lanham Act is silent as to service of process and personal jurisdiction. *See* 15 U.S.C. §§ 1051 *et seq.*; *see also Boat Owners Ass'n of the U.S. v. Flagship Towing LLC*, No. 2:15-cv-197-FtM-29DNF, 2015 WL 3866858, at *1 (M.D. Fla. June 23, 2015) ("[T]he Lanham Act contains no such service of process provision[.]").[1] Plaintiff has not alleged a violation of a federal statute authorizing

---

[1] In maintaining that its Lanham Act claim gives rise to jurisdiction, Plaintiff mistakenly relies on cases concerning subject matter jurisdiction, not personal jurisdiction. For example, Plaintiff's reliance on *Kentucky Fried Chicken Corp. v. Diversified Packaging Corp.*, 549 F.2d 368 (5th Cir. 1977), is misplaced. *See* Dkt. 46 at 6. There, the former Fifth Circuit explained that the plaintiff's assertion of Lanham Act claims provided the district court with subject matter

6

nationwide service of process such that Rule 4(k)(1)(C) would apply.

With Rule 4(k)(1)(C) inapplicable to this case, the question becomes whether Rule 4(k)(1)(A) authorizes personal jurisdiction over Mr. Poddar. Rule 4(k)(1)(A) permits a court to exercise personal jurisdiction over a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Accordingly, for the Court to exercise personal jurisdiction over Mr. Poddar, the exercise of that jurisdiction must (1) be permitted by Florida's long-arm statute and (2) comport with the due process requirements of the Fourteenth Amendment. *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1352 (11th Cir. 2013) (citation omitted). "If the forum's long-arm statute provides jurisdiction over one claim, the district court has personal jurisdiction over the entire case so long as the claims arose from the same jurisdiction generating event." *Brennan v. Roman Cath. Diocese of Syracuse N.Y., Inc.*, 322 F. App'x 852, 854 (11th Cir. 2009) (citing *Cronin v. Washington Nat'l Ins. Co.*, 980 F.2d 663, 671 (11th Cir. 1993)). The Court turns first to the state's long-arm statute.

## I.  Florida's Long-Arm Statute

Florida's long-arm statute provides for two types of personal jurisdiction:

---

jurisdiction. *Ky. Fried*, 549 F.2d at 391−92. The existence of personal jurisdiction was not at issue. *See id.*

general jurisdiction and specific jurisdiction. Fla. Stat. § 48.193(1)–(2). General

jurisdiction exists where a defendant "is engaged in substantial and not isolated

activity within [Florida]," regardless of where the cause of action arose. *Mosseri*,

736 F.3d at 1352 (quoting section 48.193(2)). Engaging in "substantial and not

isolated activity" means having "continuous and systematic general business

contact" with the state. *Gazelles FL, Inc. v. Cupp*, No. 6:18-cv-544-Orl-22KRS,

2018 WL 7364591, at *5 (M.D. Fla. Sept. 26, 2018) (quoting *Woods v. Nova Cos.

Belize Ltd.*, 739 So. 2d 617, 620 (Fla. 4th DCA 1999)). Specific jurisdiction, on the

other hand, exists where a defendant's contacts with Florida give rise to the

plaintiff's claims. *Id.* (citation omitted).

The Court must consider whether Plaintiff has pled a prima facie case for

either kind of jurisdiction. "A prima facie case is established if the plaintiff

presents enough evidence to withstand a motion for a directed verdict." *Robinson

v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 255 (11th Cir. 1996) (citation omitted).

Here, it is clear that Plaintiff has not pled a prima facie case of general jurisdiction.

The Amended Complaint contains no allegations suggesting that Mr. Poddar—or

Pods—engaged in substantial and not isolated activity in Florida. The only alleged

business contact between Florida and either Defendant is the transaction

underlying this suit. One transaction does not constitute continuous and systematic

general business contact with the state. *See Matter of Gov't of Mong. v. Itera Int'l*

8

*Energy, L.L.C.*, No. 3:08-mc-46-J-32MCR, 2009 WL 10712603, at *4 (M.D. Fla. Nov. 10, 2009) (citing *Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 U.S. 408 (1984)).

Though Plaintiff has not alleged a basis for general jurisdiction, the Court finds that it has pled a prima facie case for specific jurisdiction. Section 48.193(1)(b) of Florida's long-arm statute confers specific jurisdiction over a nonresident defendant who, inter alia, commits a tortious act within the state. A defendant need not be physically present in Florida to commit a tortious act within the state. *Brennan*, 322 F. App'x at 854 (citing *Wendt v. Horowitz*, 822 So. 2d 1252, 1260 (Fla. 2002)). Rather, a nonresident defendant's tortious act that is committed outside of Florida but causes injury in Florida can give rise to specific jurisdiction under section 48.193(1)(b). *Id.* (citing *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1216 (11th Cir. 1999)). For example, a nonresident's telephonic, electronic, or written communications that cause injury in Florida may form the basis for the long-arm statute's reach. *Wendt*, 822 So. 2d at 1260.

In its Amended Complaint, Plaintiff alleges that Mr. Poddar engaged in tortious conduct that caused injury to Plaintiff, a Florida-based company. Specifically, Plaintiff alleges that Mr. Poddar fraudulently represented to Plaintiff that Pods was capable of delivering 100,000 iHealth COVID-19 test kits to Plaintiff's principal place of business in Florida within a week of payment. Dkt. 17

9

¶¶ 18, 89−95. However, Pods failed to deliver any test kits on time, and most of the test kits that were eventually delivered were purportedly defective and counterfeit. *Id.* ¶¶ 31−37.

The Court finds that Mr. Poddar's purported fraud constitutes a tort committed within Florida, as it was aimed at a Florida-based company that suffered injury in Florida. Plaintiff's additional claims against Mr. Poddar for negligent misrepresentation, false designation of origin under the Lanham Act, and a violation of the FDUTPA also arise out of this same jurisdiction-generating event. The Court therefore finds that Plaintiff has stated a prima facie case for specific jurisdiction over Mr. Poddar, as its allegations would withstand a directed verdict. *See AutoNation, Inc. v. Hall*, No. 19-60291-CIV-ALTONGAGA/Seltzer, 2019 WL 3712008, at *6 (S.D. Fla. May 29, 2019) (citation omitted).

With Plaintiff pleading a prima facie case for personal jurisdiction, the burden shifts to Mr. Poddar to present affidavit evidence contradicting Plaintiff's showing. *See Mazer*, 556 F.3d at 1274. Upon a defendant's provision of affidavits, the burden traditionally shifts back to the plaintiff "unless those affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction." *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002). Here, Mr. Poddar fails to shift the burden back to Plaintiff because his affidavit only contains conclusory assertions. *See* Dkt. 44-1. Mr. Poddar simply states that his

10

company "has not committed a tortious act in Florida" and "has not caused injury to persons or property in Florida." *Id.* at 1. He further asserts that Plaintiff's allegations "do not arise from any activity by [Pods] in Florida" or any tortious conduct that he himself committed. *Id.* at 2. These conclusory allegations do not contradict the allegations within Plaintiff's Amended Complaint.

Given that Mr. Poddar has not contradicted Plaintiff's allegations, the Court must take them as true. *See Robinson*, 74 F.3d at 255. As alleged in the Amended Complaint, Mr. Poddar's tortious conduct was directed at Plaintiff, a Florida-based company that felt the subsequent harm in Florida. Accordingly, for purposes of section 48.193(1)(b), Mr. Poddar has committed a tortious act within Florida that gives rise to each of Plaintiff's claims against him. Florida's long-arm statute therefore reaches Mr. Poddar.

## II. Due Process

Having established that Florida's long-arm statute reaches Mr. Poddar, the Court must next determine whether exercising personal jurisdiction over Mr. Poddar would comport with the due process requirements of the Fourteenth Amendment. *See Mosseri*, 736 F.3d at 1352. Due process requires that a nonresident defendant "have certain minimum contacts with [the forum state] such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). To

11

determine whether due process would be satisfied, a court must consider:

> (1) whether the plaintiff's claims "arise out of or relate to" at least one of the defendant's contacts with the forum; (2) whether the non-resident defendant "purposefully availed" himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice."

*Mosseri*, 736 F.3d at 1355 (citations omitted).

A plaintiff bears burden of establishing the first two prongs of the due process test. *Id.* If the plaintiff carries its burden, the burden shifts to the defendant to make a "compelling case" that the exercise of personal jurisdiction would violate traditional notions of fair play and substantial justice. *Id.* (citation omitted). The Court considers the three prongs in turn.

A. *Relatedness*

The first prong of the due process inquiry asks whether there is a "direct causal relationship between the defendant, the forum, and the litigation." *Id.* at 1355–56. As noted above, Plaintiff alleges that Mr. Poddar falsely represented that Pods could ship 100,000 iHealth COVID-19 test kits to Plaintiff in Florida within a week of payment. When Mr. Poddar's company instead allegedly delivered late, defective, and counterfeit test kits, the Florida-based company suffered harm in Florida. Plaintiff's four causes of action against Mr. Poddar—fraud, negligent misrepresentation, false designation of origin, and a FDUTPA violation based, in part, on the same tortious conduct—arise out of Mr. Poddar's purported false

12

representations of his company's ability to meet Plaintiff's test kit needs. By

showing this connection between Mr. Poddar, Florida, and the present litigation,

Plaintiff has satisfied the relatedness prong.

### B. Purposeful Availment

The second prong of the due process inquiry requires the Court to consider

whether Mr. Poddar purposefully availed himself to the privilege of conducting

activities in Florida. *Id.* at 1355. Three of Plaintiff's claims against Mr. Poddar—

fraud, false designation of origin, and a violation of FDUTPA—constitute

intentional torts.[2] Where a plaintiff alleges intentional torts, a court may assess

purposeful availment using the traditional "minimum contacts" test or the "effects

test" set forth in *Calder v. Jones*, 465 U.S. 783 (1984). *Mosseri*, 736 F.3d at 1356.

The minimum contacts test requires a court to determine whether a

nonresident defendant's contacts with the forum state (1) are related to the causes

of action against him; (2) involve some act by which the defendant purposefully

availed himself to the privilege of doing business in the forum state; and (3) are

such that the defendant should reasonably anticipate being haled into court into the

forum state. *Id.* at 1357. The effects test, on the other hand, provides that a

---

[2] Although statutory in nature, FDUTPA claims have been held to sound in tort. *See Crowley Liner Servs., Inc. v. Transtainer Corp.*, No. 6-21995, 2007 WL 433352, at *5 (S.D. Fla. Feb. 6, 2007); *Am. Boxing & Athletic Ass'n v. Young*, 911 So. 2d 862, 865 (Fla. 2d DCA 2005). Here, Plaintiff bases its FDUTPA claim on Mr. Poddar's alleged commission of intentional torts, including fraud. *See* Dkt. 17 ¶¶ 80, 84−86.

nonresident defendant's commission of a single intentional tort can establish purposeful availment, even where he has no other contacts with the forum state. *Id.* at 1356 (citation omitted). To satisfy the effects test, a nonresident defendant's tort must have (1) been intentional, (2) been aimed at the forum state, and (3) caused harm that the defendant should have anticipated would be felt in the forum state. *Id.* (citation omitted).

The Court finds that Mr. Poddar's alleged commission of intentional torts satisfies the effects test such that his lack of other contacts with Florida is of no import in the purposeful availment analysis. As the Court previously explained, Plaintiff has alleged that Mr. Poddar's intentional torts were aimed at Plaintiff, a Florida-based company, and led to the late shipment of thousands of purportedly defective, counterfeit COVID-19 test kits into Florida. Mr. Poddar's purported intentional torts can be said to have been aimed at the forum state, satisfying the first and second prongs of the effects test.

Concerning the last prong of the effects test, the Court finds that Mr. Poddar's alleged intentional torts caused harm in Florida that Mr. Poddar should have anticipated. Purportedly relying on Mr. Poddar's fraudulent representations of Pods' ability to quickly deliver a substantial quantity of iHealth COVID-19 test kits, Florida-based Plaintiff ordered 100,000 test kits. Plaintiff immediately paid Pods the invoice price of $1,400,000 only for Pods to allegedly ship defective,

counterfeit test kits to Florida after the agreed-upon delivery date had passed.

Taking Plaintiff's allegations as true, Mr. Poddar should have anticipated that he

would be haled into a Florida court, as his purported fraudulent representations,

false designations of origin, and other intentionally deceptive business practices

prompted and adversely affected a major transaction with a Florida-based company

requiring Florida delivery. Moreover, Plaintiff's negligent misrepresentation claim

arises from the same event. With the three prongs of the effects test satisfied, the

Court finds that Mr. Poddar purposefully availed himself to the privilege of doing

business in Florida.

### C. Fair Play and Substantial Justice

Turning to the final prong of the due process analysis, the burden shifts to

Mr. Poddar to establish that exercising personal jurisdiction over him would offend

traditional notions of fair play and substantial justice. *Id.* at 1355. In determining

whether Mr. Poddar has carried this burden, the Court must consider factors such

as "the burden on the defendant of litigating in the forum, the forum's interest in

adjudicating the dispute, the plaintiff's interest in obtaining convenient and

effective relief and the judicial system's interest in resolving the dispute."

*Brennan*, 322 F. App'x at 856−57 (citing *World-Wide Volkswagen Corp. v.*

*Woodson*, 444 U.S. 286, 292 (1980)).

Here, the Court finds that exercising personal jurisdiction over Mr. Poddar

would not offend traditional notions of fair play and substantial justice. Though Mr. Poddar alleges that he will be burdened if made to litigate in Florida, the Court notes that Pods—the defendant company owned and operated by Mr. Poddar, its sole member—has stipulated to this Court's exercise of personal jurisdiction over it. *See* Dkt. 31 ¶¶ 5−6. Mr. Poddar has not explained how he would be burdened by litigating in Florida alongside his closely-held company. Relatedly, with Pods already subject to this Court's personal jurisdiction, Plaintiff's interest in obtaining convenient and effective relief leads the Court to find that exercising personal jurisdiction over Mr. Poddar in this case would not offend traditional notions of fair play and substantial justice.

The Court also notes that "Florida has a very strong interest in affording its residents a forum to obtain relief from intentional misconduct of nonresidents causing injury in Florida." *Licciardello*, 544 F.3d at 1288. As the Court explained, Plaintiff has alleged that Mr. Poddar committed intentionally tortious conduct, including fraud, that caused harm to the Florida-based Plaintiff. Florida therefore has a very strong interest in allowing Plaintiff to obtain relief within the state. Finally, Mr. Poddar has not demonstrated why the judicial system would lack a strong interest in efficiently resolving this dispute. The Court finds that the judiciary's interest is not opposed to adjudication of this case against Mr. Poddar in Florida.

Ultimately, "[t]he inconvenience caused to [Mr. Poddar], while not insignificant, does not outweigh the factors that mitigate in favor of the district court's exertion of personal jurisdiction over him." *See Cronin*, 980 F.2d at 671. Exercising personal jurisdiction over Mr. Poddar would not offend traditional notions of fair play and substantial justice. Given both the long-arm statute and due process prongs of the personal jurisdiction inquiry are satisfied, the Court finds that it may exercise personal jurisdiction over Mr. Poddar.

## CONCLUSION

Based on the foregoing, Defendant Deepak Poddar's Amended Motion to Dismiss for Lack of Personal Jurisdiction, Dkt. 44, is **DENIED**. Mr. Poddar shall file his answer to Plaintiff's Amended Complaint within fourteen (14) days. However, because Plaintiff's Count III is not a cognizable claim, Count III is **DISMISSED**.

**DONE AND ORDERED** at Tampa, Florida, on January 3, 2023.

/s/ William F. Jung
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO:**
Counsel of Record

17